

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

December 22, 2017

Via EMAIL
The Honorable Richard M. Berman
United States District Judge
Southern District of New York
Fax: 212-805-6717

      Re:    **United States v. Ahmad Khan Rahimi,**
             **16 Cr. 760 (RMB)**

Dear Judge Berman:

      The Government respectfully writes to request a hearing pursuant to *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982), with respect to the representation of defendant Ahmad Khan Rahimi by the Federal Defenders of New York. As set forth below, the defendant has been attempting to radicalize fellow inmates in the Metropolitan Correction Center (the "MCC") by, among other things, distributing propaganda and publications issued by terrorist organizations. One of the individuals to whom the defendant has distributed terrorist propaganda, Sajmir Alimehmeti, is currently represented by Sabrina Shroff, who also represents the defendant. *See United States v. Sajmir Alimehmeti*, 16 Cr. 398 (PAE). Another of the individuals to whom the defendant distributed terrorist propaganda ("Inmate-1") is represented by another member of the Federal Defenders.

      Accordingly, and for the reasons set forth below, the Government submits that a *Curcio* hearing should be held to ensure that the defendant has knowingly waived the potential conflict of interest that exists between the defendant and his attorneys.

      **I.**    **Background**

      As the Court is aware, on October 16, 2017, the defendant was convicted at trial of all eight counts in the Indictment. These charges arose from the bombing and attempted bombing the defendant carried out in New York City on September 17, 2016, which caused injuries to more than 30 people and millions of dollars in property damage. Evidence presented at trial revealed that the defendant's attack was motivated by a violent ideology espoused by

terrorist leaders like Usama Bin Laden and groups like al Qaeda, Islamic State in Iraq and al Sham ("ISIS"), and al Qaeda in the Arabian Peninsula ("AQAP"). In the years leading up to the defendant's attack, for example, he compiled, studied, and distributed terrorist propaganda and publications such as, among other things, a publication entitled the "Book of Jihad," every issue of AQAP's *Inspire* magazine, and speeches by Anwar al-Awlaki, a former senior leader of AQAP.

Beginning in at least October 2017, while incarcerated at the Metropolitan Correction Center (the "MCC"), the defendant distributed extremist materials to other inmates, including, among others, Sajmir Alimehmeti and Inmate-1. The defendant provided these individuals access to and copies of terrorist propaganda and jihadist materials that had been located on the defendant's electronic devices during the investigation in this case and produced to him in discovery. The defendant met with some of the individuals to whom he provided access of these materials during the *juma* prayer sessions on Fridays. The materials included, among other things, speeches and lectures by Anwar al-Awlaki and Usama Bin Laden; books on Jihad; bomb-making instructions; *nasheeds* espousing jihadist ideology; and various issues of *Inspire*. The defendant allowed the inmates to view these materials on his laptop, and also provided some of them with electronic copies. The Government has recovered these materials from a disc in Inmate-1's possession, as well as from a disc and hard drive in the possession of Alimehmeti. As discussed above, Inmate-1 is represented by a member of the Federal Defenders, and Alimehmeti is represented by Ms. Shroff. The trial against Alimehmeti on terrorism-related charges is scheduled to begin on January 29, 2018 before the Honorable Paul A. Engelmayer.

After learning of the defendant's radicalization efforts, the MCC staff searched his personal property and located, among other things, an address book containing the names and inmate numbers of other defendants charged with terrorism offenses, including Muhanad Mahmoud Al-Farekh, who was recently convicted in the Eastern District of New York for participating in an attack on a U.S. Army base in Afghanistan in 2009 (*see United States* v. *Mahanad Mahmoud Al-Farekh*, 15 Cr. 268 (BMC)), and Maalik Alim Jones, who recently pled guilty in the SDNY to charges stemming from his involvement fighting with al-Shabaab in Somalia (*see United States* v. *Maalik Alim Jones*, 16 Cr. 19 (PGG)). In addition to the address book, MCC staff found a notebook that includes several pages itemizing particular electronic files of terrorist propaganda materials.

## II. Applicable Law

The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel, which includes "the right to representation by conflict free counsel." *United States* v. *Schwarz*, 283 F.3d 76, 90 (2d Cir. 2002). "An attorney has a potential conflict of interest if 'the interests of the defendant may place the attorney under inconsistent duties at some time in the future.'" *United States* v. *Perez*, 325 F.3d 115, 125 (2d Cir. 2003) (quoting

*United States* v. *Klitti*, 156 F.3d 150, 153 n.3 (2d Cir. 1998)). Conflicts "such as an attorney's representation of two or more defendants or his prior representation of a trial witness, are generally waivable." *United States* v. *Perez*, 325 F.3d at 125.

Courts have two separate obligations where there is a possible conflict of interest. First, the court has an "inquiry obligation" when it is apprised of the possibility of a conflict of interest, pursuant to which it must "investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." *United States* v. *Levy*, 25 F.3d 146, 153 (2d Cir. 1994). Second, if the court finds that the defendant's attorney faces an actual or potential conflict, a "disqualification/waiver" obligation arises, pursuant to which the court must either: (i) disqualify the attorney if the conflict is sufficiently severe, or (ii) if the conflict may be waived, conduct a *Curcio* hearing to advise the defendant of the ramifications of the conflict and obtain a waiver of any conflict from the defendant.

With respect to the Court's inquiry obligation, New York's Rules of Professional Conduct offer guidance regarding conflicts of interest involving current clients. "Concurrent conflicts of interest, which can impair a lawyer's professional judgment, can arise from the lawyer's responsibilities to another client . . . ." N.Y. Rules of Prof'l Conduct 1.7 cmt. 1. Rule 1.7(b) provides:

> (b) Notwithstanding the existence of a concurrent conflict of interest . . . , a lawyer may represent a client if:
>
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law;
>
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>
> (4) each affected client gives informed consent, confirmed in writing.

*Id.* Under Rule 1.10(a), any potential conflict faced by defense counsel under Rule 1.7 is imputed to the Federal Defenders, who also represent Defendant-1.

Consistent with the requirements of Rule 1.7(b), the Second Circuit has expressed "uneasiness about sanctioning the joint representation of criminal defendants." *United States* v. *Curcio*, 680 F.2d 881, 887 (2d Cir. 1982); *see also Holloway* v. *Arkansas*, 435 U.S. 475, 490 (1978) ("[I]n a case of joint representation of conflicting interests the evil—it bears repeating—is

in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process." (emphasis in original)). Nevertheless, if a defendant "can rationally opt to retain counsel of his choice despite a conflict, the court conduct[s] a *Curcio* hearing to determine whether the defendant knowingly and intelligently waives his right to conflict-free representation." *Perez*, 325 F.3d at 127.

Finally, courts "retain discretion to reject a defendant's knowing and intelligent waiver when his attorney's conflict jeopardizes the integrity of judicial proceedings." *Id.* at 125; *see also United States* v. *Locascio*, 6 F.3d 924, 933-34 (2d Cir. 1993) ("[W]aiver by the accused of the conflict can conceivably alleviate the constitutional defect, so long as the representation by counsel does not seriously compromise the integrity of the judicial process.").

### III.     Discussion

The potential conflict of interest described above could present challenges to the Federal Defenders' duties of loyalty and confidentiality to Rahimi, Alimehmeti, and Inmate-1. For example, and particularly because the defendant's sentencing is scheduled to proceed shortly before Alimehmeti's trial will begin, counsel may be reluctant to fully explore certain issues relating to the conduct set forth above on behalf of the defendant, out of a concern that it will adversely affect Alimehmeti at trial.[1] In addition, counsel may have access to information from the representation of Alimehmeti that she may not use to investigate these issues on behalf of Rahimi.

Under these circumstances, the Government respectfully requests that the Court conduct a *Curcio* proceeding to advise the defendant of his right to conflict-free representation and to inquire as to whether he understands and waives the potential conflict. After advising the defendant of the risks inherent in Federal Defenders' continued representation of him, the Government requests that the Court afford the defendant reasonable time to digest and contemplate those risks, as well as an opportunity to consult with independent counsel. *See United States* v. *Curcio*, 680 F.2d 881, 890 (2d Cir. 1982). If the defendant subsequently informs the Court that he wishes to proceed with Federal Defenders as his counsel, the Government requests that the Court elicit narrative responses from him designed to ascertain whether he is fully aware of the risks involved in the representation, and determine whether the

---

[1] The Government currently seeks to offer at trial against Alimehmeti, among other things, Rahimi's laptop, which contains certain of the discovery materials he provided to Alimehmeti and Inmate-1; the disc recovered from Inmate-1; and the disc and hard drive recovered from Alihmehmeti.

Hon. Richard M. Berman Page 5
December 22, 2017

defendant is making a knowing and intelligent waiver of his right to conflict-free representation. Enclosed as Exhibit A for the Court's consideration is a proposed list of questions relating to the requested *Curcio* inquiry.

        Respectfully submitted,

        Joon H. Kim
        Acting United States Attorney

By: <u>Shawn G. Crowley</u>
    Emil J. Bove III
    Shawn G. Crowley
    Andrew J. DeFilippis
    Assistant United States Attorneys
    (212) 637-2444 / 1034 / 2231

# EXHIBIT A

**Proposed *Curcio* Examination**

*United States* **v.** *Ahmad Khan Rahimi*, **16 Cr. 760 (RMB)**

I. **Introductory Questions To Establish Competence**

- How old are you?

- How far did you go in school?

- Do you currently consult a doctor or mental health professional for any condition?

- Are you currently under the influence of alcohol or drugs?

- Is anything interfering with your ability to understand what is happening here today?

II. **Potential Conflict Of Interest Posed By Federal Defenders' Representation**

- Are you currently represented by Sabrina Shroff, Matthew Larsen, Peggy Cross-Goldberg, and Meghan Gilligan from the Federal Defenders of New York, which I am going to refer to today as the "Federal Defenders"?

- Are you satisfied with the services of the Federal Defenders thus far?

- Have your attorneys informed you that in a separate criminal case Ms. Shroff represents a defendant named Sajmir Alimehmeti, who will begin trial on terrorism charges in January 2018?

- Have your attorneys discussed with you Ms. Shroff's representation of Sajmir Alimehmeti?

- On December 22, 2017, the Government submitted two letters to the Court and your attorneys. Those letters describe a defendant in a criminal case in the Eastern District of New York, who I am going to refer to today as "Defendant-1." Have you read both of the Government's December 22, 2017 letters?

- Have you discussed both of the Government's December 22, 2017 letters with the Federal Defenders?

- Have your attorneys informed you that other lawyers from Federal Defenders represent Defendant-1?

1

- Have your attorneys discussed with you the Federal Defenders' representation of Defendant-1?

- Do you understand that the fact that Ms. Shroff represents Sajmir Alimehmeti may put her in a position where her duty to Alimehmeti conflicts with her duty to you?

- Do you understand that the fact that other lawyers from Federal Defenders represent Defendant-1 may put Federal Defenders in a position where the duties of that organization to Defendant-1 conflict with its duties to you?

- The potential conflicts could affect the way that your current lawyers from Federal Defenders, including Ms. Shroff, consider and advise you concerning, among other things, what arguments to make to the Court, and what facts to bring to the Court's attention at your sentencing; whether to appeal your conviction; and what arguments to make on appeal, if any.

- Let me expand on some of those examples.

    o Do you understand that your current attorneys may not wish to take positions at your sentencing that are critical of Sajmir Alimehmeti or Defendant-1, even if criticizing one or both of them might help your defense?

    o Are you aware that Ms. Shroff may have learned information from Sajmir Alimehmeti that may be helpful in defending you, but that she is absolutely prohibited from using that information to defend you because of the attorney-client privilege?

    o Similarly, are you aware that other attorneys at Federal Defenders may have learned information from Defendant-1 that may be helpful in defending you, but that attorneys from Federal Defenders are absolutely prohibited from using such information to defend you because of the attorney-client privilege?

    o Do you understand each of these examples?

**III.   Defendant's Understanding of the Potential Conflicts**

- Please describe to me in your own words the potential conflicts of interest arising in this situation.

- Do you understand that, in every criminal case, including this one, the defendant

2

> is entitled to the assistance of counsel whose loyalty to him is undivided, and who is not subject to any factor that might in any way intrude upon an attorney's loyalty to his interests?
>
> - In other words, do you understand that you are entitled to an attorney who has only your interests in mind, and not the interests of any other client?
>
> - Do you understand that you have the right to object to continued representation by Federal Defenders based upon the existence of a conflict of interest?
>
> - Have you received any inducements, promises, or threats with regard to your choice of counsel in this case?
>
> - Do you understand that the greatest danger to you in this situation is the inability to foresee all of the possible conflicts that might arise because of Ms. Shroff's representation of Alimehmeti and Federal Defenders' representation of Defendant-1, on the one hand, and Federal Defenders' representation of you, on the other?
>
> - It is important that you understand that no one, including the Court, can predict with any certainty the course that this case will take and that no one, including the Court, can foresee all the ways in which you may be disadvantaged by proceeding with attorneys from Federal Defenders.  Do you understand that?
>
> - Do you understand that you have a right to consult with an attorney free from any conflict of interest about this issue, and that the Court will give you an opportunity to do that if there is any aspect of the information that I have conveyed to you today that you wish to discuss with a conflict-free attorney?
>
> - The Court is prepared to adjourn the remainder of this proceeding so that you may consult with an attorney who does not work at Federal Defenders about the potential conflict of interest that I have described to you today.  In addition, the Court can appoint an attorney for you to consult on this matter if you cannot afford one.  Would you prefer to adjourn until you can give more thought to this matter?

**IV.  Continuation Of *Curcio* Hearing**

> - After considering all that I have said today about the ways in which Ms. Shroff's representation of Sajmir Alimehmeti and the Federal Defenders' representation of Defendant-1 may adversely affect your defense, do you believe that it is in your best interest to continue with Ms. Shroff, Ms. Cross-Goldberg, Mr. Larsen, and Ms. Gilligan as your attorneys?

- Is that your wish?

- Do you understand that by choosing to continue with Ms. Shroff, Ms. Cross-Goldberg, Mr. Larsen, and Ms. Gilligan as your attorneys, you are waiving your right to be represented solely by an attorney who has no conflict of interest?

- Are you knowingly and voluntarily waiving your right to conflict-free representation?

- Do you agree to waive any post-conviction argument, on appeal or otherwise, that by virtue of Federal Defenders' representation of Sajmir Alimehmeti and Defendant-1, you were denied effective assistance of counsel by Ms. Shroff, Ms. Cross-Goldberg, Mr. Larsen, and Ms. Gilligan?

- Is there anything that I have said that you wish to have explained further?